The next case is number 221913, Rhode Island Truck Center, LLC v. Daimler Trucks North America, LLC. At this time, would counsel for the appellant please introduce himself on the record to begin. May it please the Court, Ned Sackman here on behalf of Rhode Island Truck Center. Here with me is my colleague at counsel table, Hillary Holmes-Rayhom. I'd like to reserve two minutes for rebuttal. You may. Thank you. In this appeal, RITC challenges the ruling that the Rhode Island Dealer Protection Act is unconstitutional as applied to Rhode Island Truck Center's appointment of a dealership in Massachusetts that was nevertheless in its area of responsibility. Can I just get a little more specific? The claim that you brought is a state law claim? Yes, that's correct. And the only ground for jurisdiction you're claiming is removal in a diversity case, correct? I believe it is DTNA that claims that, but nevertheless, we do not challenge it, yes. So, in other words, we brought a case in front of the Rhode Island Dealer Board. And they then removed? We, the proper, as we understood it, the proper procedure for appealing that decision was to file in Rhode Island State Court, which we filed data and removal. Data and removal. And the ground for removal was diversity? I believe that is correct, yes. Is your claim a federal constitutional claim you're raising from the agency to the states of your court? No, it's a claim under Rhode Island state law. Okay, so that leads me to the following jurisdictional question, which is how do we have jurisdiction over this? We've held in the Armstead case that we don't have jurisdiction over a case in which it's effectively an appeal under state law of a state administrative agency decision. And then independent of that, there's Burford abstention. I'm not quite sure why either or both of those don't block us getting to the merits of this. Those were not issues that we briefed, Your Honor, or frankly considered. If the court would like us to comment on that, we'd certainly be glad to do so in some sort of post-briefing. But our position was they removed it, we did not contest the federal district court's jurisdiction, and we went on from there. Okay, but even at the appellate level, it could be the United Supreme Court. If there's no jurisdiction, we have to address it. I certainly do not dispute that subject matter jurisdiction can be raised at any time. With that, would the court like me to proceed with the argument on the merits? Can't hurt. We're all here and dressed up and ready to go, so I'll proceed with the argument on the merits. So the district court held that the extraterritoriality doctrine, which is a branch of the Dormant Commerce Clause, prevented the Rhode Island law from applying in this situation where you had a Rhode Island truck dealer who has an area of responsibility that goes across the border into Massachusetts. Did the agency purport to make a ruling that state law did extend in a way that would implicate the Dormant Commerce Clause? Yes. So the agency sided with DTNA, and what it said is there is a Dormant Commerce Clause issue here. Did the agency assert that the area of control properly construed extends outside Rhode Island? No. It did not? No. It held that in order to apply the statute the way we want, it would violate the Dormant Commerce Clause. Okay. But there's a threshold question there, which is what does state law mean? And we don't get to decide that. Rhode Island gets to decide that. Now, we can prophesy what the highest court of Rhode Island would do if that was an appropriate thing for us to be doing the diversity case. But under ERIE, there's just a threshold question. Does the area of control under the Rhode Island statute extend beyond the borders of Rhode Island? That's answerable by state law. And what is the answer that the agency gave to that question? The answer I understand it to have given is that applying the law beyond the border of Rhode Island would violate the Dormant Commerce Clause. And so... That's like an answer you would give in a law school class. Do you think it would violate the Dormant Commerce Clause? Student says yes. I'm asking what does state law do? And does the agency take a position on what state law does? Right. And so I think the reason I'm having trouble answering your question is that I don't read the dealer board as having answered it. So when you're asking me, well, what was the dealer board's position? I don't think it... You brought a state law claim. Yes. In resolving the claim, is the ultimate answer the state law is unconstitutional? Or is the ultimate answer that the agency gives the state law does not reach the conduct? Independent, we can get to why they say that, but is the ultimate outcome that the state law does not reach the conduct because it does not go beyond the borders? As I read it, it's that the state law as applied is unconstitutional. I'll just quote for a moment from the decision. The Commerce Clause of the United States precludes the application of a state statute to commerce that takes place wholly outside the state's borders whether or not the commerce has effects in the state. So that's what the... Well, that's a conclusion about something about the Dormant Commerce Clause. But in the consequence of that is the conclusion that the state law, therefore, is unconstitutional? Or is the board holding instead the state law does not reach the conduct? As I read it, it says, any attempt to apply Rhode Island's dealership distribution of franchise law in an extraterritorial manner would certainly run afoul of the Commerce Clause. Yeah. And then it's holding what? That, therefore, it's unconstitutional because it does attempt to do that and it can't? Or is it holding, therefore, it does not attempt to do that and we don't read it to do it? It does not, as I read this opinion, interpret the statute to say, we're going to, therefore, interpret the statute not to go that far. As I read the opinion, it says, therefore, what Rhode Island Truck Center wants to do here would violate the Commerce Clause and they can't do it. So I don't read anything in here that says, for example, there are some cases, DTNA site, where they said, well, in Wisconsin, Wisconsin has this rule that you don't interpret statutes to apply extraterritorially. There's nothing like that here. There's nothing like that in the Dealer Board opinion. There's nothing like that in the Federal District Court opinion. So I don't see anything in what's occurred so far from the Rhode Island Dealer Board saying that the law doesn't go beyond. So should we understand the case to have been decided by the agency on the understanding that it does go farther and that it's unconstitutional? I think that's what the agency concluded, yes. Yes. So what it said is, for example, and I'll try to answer it by pointing out what it didn't say. It didn't say, we can't help you because our law stops at the border. It says, we can't help you because in order to apply this law the way you want, it would be a violation of the Dormant Commerce Clause. So as the case comes to us, we don't yet have any interpretation of the reach of the state law. I think in terms of how we wanted to apply it, yes. The only reason that I paused there is you do have Fireside Nissan, which is the First Circuit opinion, which did interpret the reach of the state law in a different direction. And two features to that. One, it said the Massachusetts dealer can't come in and challenge and participate in a Rhode Island protest process. But the other thing it said is, the law does apply to manufacturers. And it does reach outside of Rhode Island to apply to manufacturers. There's no holding in Fireside that the area of control actually, it says, there's no holding in that case that the area of control extends beyond Rhode Island. That's right. And there's no holding that it doesn't. I think that was not an exertorial application case. So yes, I just, in answering your question in terms of... Answering your question that turns on a hypothetical interpretation of state law that no state agency or court has weighed in on. Well, I don't think it's hypothetical because... Well, it's hypothetical if it turns out the state law doesn't reach that far. If it doesn't reach that far, then we don't get to the Dormant Commerce Clause question. And yet, neither the state agency nor any state court has addressed that question. I think it's fair to say that, yes. It's pretty unusual for us to jump to a federal constitutional question that turns on an interpretation of state law when no state agency or court has yet weighed in on it. I think if you go back to the Rhode Island law, and I'll just reach back to our briefing in front of the dealer board in an attempt to address this for this court because we're here today. What we said is the law applies when you put a new dealership in a relevant market area. That's a statutorily defined term under Rhode Island law. And relevant market area means anywhere within 20 miles of the dealer or anywhere where an area of responsibility has been assigned. That interpretation of relevant market area has not been challenged. And what we wrote in our briefing is Rhode Island knows where its borders are. When they say 20 miles, they don't say 20 miles unless you get to the border. It just says 20 miles. And so particularly in New England, where you've got states that are close together, situations like this one, we have the dealer right on the border, 20 miles will inevitably reach beyond. Is there any state with the dealer law that does apply its equivalent framework outside its own borders? I am not aware of any case that has affirmatively held that. And there's many, many cases that have held the opposite with respect to those state laws. There are cases where if you try to come into this state, you can't. So in other words, there are cases like Fireside Nissan where you've got an out-of-state dealer. I thought there was a Sixth Circuit case, there's the South Carolina case, Kentucky, South Carolina, there's the Seventh Circuit case about Indiana. I thought there's a whole bunch of cases that have all read those state laws not to have the extra-territorial reach that you're claiming Rhode Island's law has. Each of those cases was different. So starting with the Carolina trucks case, that one was South Carolina and Georgia. And what the court said there was there is a principle of state law. I'm not asking whether there's a reason for it that might not apply here. I'm just asking a simple question. No other state that we know of applies its equivalent dealer law out-of-state. And all the dealer laws that have come to court have been held to apply only within the state's borders. True? I think true on the facts of those cases. But this case presents a different set of facts than those cases. Would you be doing that when no state court or state agency has endorsed that interpretation? It would be the first time I'm aware of that an appellate court has been asked. And so, yes, it would be the first time that the state would apply outside of its borders. But there is a lot of Supreme Court and First Circuit guidance on why that's okay. So I understand this court may have some concerns about the abstention issue and the jurisdiction issue. Purely on the extraterritoriality doctrine issue, there is not a concern that there would be a constitutional violation. And the reason for that is IMS and, most recently, National Pork Producers Council would say that under the Dormant Commerce Clause, cases about price affirmation are going to be a problem under the extraterritoriality doctrine. And perhaps, to some extent, cases where you have regulations that apply totally outside the state without an end state. And the question is in that footnote in Pork Producers, why isn't this a case like that? Why isn't this a case in which, at least with respect to the Massachusetts dealer that wants to deal with Daimler, their direct regulation of a transaction occurring wholly outside Rhode Island affecting a party that has no tie to Rhode Island, namely the Massachusetts company? Sure. So the difference is that here you've got a Rhode Island dealer whose area of responsibility covers where that Massachusetts dealer is. So this case is more like CTS Corporation where the Supreme Court approved. And last question, how is it different than Edgar Might, though? In Edgar Might, the concern was that you were going to be regulating transactions that potentially didn't even have a single Illinois resident as a shareholder. Whereas here, you're only regulating a much narrower type of conduct where you've got a Rhode Island dealer whose area of responsibility is extended over the state court. That's the difference between those two cases. Let me ask you, when you went before the dealer board, what was your basic and a nutshell claim? That you're trying to get into the Massachusetts market because it's within those 20 miles, right? No, no, not at all. The claim is we've been assigned an area of responsibility that includes Massachusetts. And you put a new dealer into our territory. We're responsible for that territory. And before you put a new dealer into that territory where we're responsible for selling trucks, we're responsible for sales metrics, so on and so forth, under Rhode Island law, we have a statutory right to notice and then protest. That's all we're trying to do. And if we lose here and we're told we can't protest in Rhode Island, we can't do it in Massachusetts either because of the way dealer is defined in Massachusetts. There'll be no forum for this case. Okay, but aren't you necessarily implying the Dormant Commerce Clause issue because Massachusetts won't let you get in. So you're telling Rhode Island, let me get in the dealer board because Massachusetts won't let me. Remedy this here. No, we're Rhode Island dealers. That's why we're under the Rhode Island law. So I can't go to Massachusetts because I'm not a Massachusetts dealer. I am a Rhode Island dealer. And what DTNA is trying to set up is a situation where I can't do anything about it either because what they happen to do, even if it's in our AOR, was in Massachusetts. Okay, but let me ask you, doesn't your grievance, whatever it's called in the dealer's board, necessarily imply the Dormant Commerce Clause or an important federal interest? Well, it certainly applies extraterritorial conduct. You know, I'm talking about Massachusetts, but that's where I get to IMS and National Pork Producers Council and why under those cases the concern is not one that amounts to Dormant Commerce Clause violations. Can I just? No, go ahead. There's also a way, even though it's not in the complaint here, it's an administrative issue, but if there's an important federal interest involved in even, you know, I'm going to well plead the complaint, maybe you didn't plead it that way, but isn't there a very important federal interest involved? And here it may be, so I'm going to ask that question. Sure, you could read an implied federal question into this. Do you have a question, Your Honor? It wouldn't be necessary to resolve the case because Rhode Island could just decide that the area of control just doesn't reach outside Rhode Island. And if they did that, then there's no federal question at all. Theoretically you could. I think they'd have to come up with a very novel interpretation of their law. Okay. In Fireside, we held that the Massachusetts dealer can't protest. Under state law, the Massachusetts dealer cannot protest. You held that it wasn't a violation of the Dormant Commerce Clause to prevent the Massachusetts dealer from protesting. And in fact, Rhode Island law prevents the Massachusetts dealer from protesting. Depending on how you read dealer versus new dealer and as applied in Fireside, yes. So if you're right about the area of control extending, wouldn't that create a protectionism concern? Because the Massachusetts dealer would be disadvantaged relative to Rhode Island dealers? That was precisely the issue in Fireside, Your Honor. And what they said is we're not going to say that concern rises to the level... But they were comparing that in a situation which they weren't necessarily deciding the question of whether the area of control extended outside Rhode Island. That's true. That wasn't an issue. I guess it's not unduly protectionist in the sense of the Commerce Clause. I mean, it is possible to read it that way, but constitutionally protectionist to the point that it violates... Okay. I get it. Thank you. Thank you, counsel. At this time, counsel for the appellee can introduce himself on the record to begin. My colleague, we did not brief, obviously, the jurisdictional issue that the court opened with. And we'd, of course, be willing to submit additional briefing on that to the extent the court would find it helpful. I don't want to get up here and try and take advantage of the fact that neither one of us are actually... Let me ask you just a follow-up question I asked opposing counsel. Would you understand that his administrative procedure, whatever it's titled that he filed, does that imply an important federal interest? So I think in answering that question, it's important to answer the question that Chief Judge Barron asked about what the dealer board actually did in this case. What the dealer board did was declined to exercise jurisdiction over the dispute that was described in the protest, which to me makes this a constitutional avoidance situation. The case law that the dealer board cited in its opinion reaching that conclusion is Fireside Nissan from this court and County Motors from the District of Rhode Island. And in each of those cases, the court first construed the statute in a way that the dealer board then applied in its decision below to mean that the Rhode Island dealer law did not extend to conduct between out-of-state parties occurring outside of Rhode Island. So in my view, this really is a constitutional avoidance case akin to the cases we cite in our briefing, including the Carolina trucks case, the Morley Murphy case in the Seventh Circuit, BMW versus Peugeot. Those are all cases where the court said, well, maybe there's a constitutional issue here, assuming the law applies outside of the enacting jurisdiction. But we can avoid that issue by finding that the law actually only reaches conduct and parties that are acting within the enacting jurisdiction. And the state courts could reach that conclusion without talking about the Dormant Commerce Clause at all? Correct. Or they could decide otherwise. That's absolutely also correct. And in this case, which of those two things did the dealer board do or did it do a third thing? And if it did a third thing, what's the third thing? So in my view, the dealer board declined to exercise jurisdiction. And it cited to case law interpreting the dealer law not to extend beyond the borders of Rhode Island. So the work that this court did in the Fireside Nissan case, admittedly, this language isn't necessarily directly related to what it had to decide in order to decide the case in front of it. But it said neither the obligations nor the benefits of the dealer law extend to the Massachusetts dealer. And it discussed the extraterritoriality concerns that would have resulted from interpreting the dealer law a different way, right, to extend those benefits. If you think about, you know, the RITC counsel, my colleague, excuse me, rightly points out, right, that this also implicates the AOR in our contract with RITC. But ultimately, Massachusetts and Rhode Island law both put a circle around a dealer location and say the right to protest exists within this circle. And if you have circles of right to protest extending across borders, they'll necessarily cross with one another. And then you have to ask the question, what state's policy preferences would control in that particular circumstance? That's pretty clearly, in my view, a direct regulation case. But the dealer board here, even if it made a state law ruling, as you're suggesting, based the state law ruling on its own understanding of the Dormant Commerce Clause. So I think it's correct to say that the dealer board was motivated by concerns about the Dormant Commerce Clause. That's absolutely right. I think it avoided in the same way that the case. It's also the case that cases dealing with dealer board statutes in other states have reached the conclusion it did not apply extraterritorially for reasons that did not depend on an analysis of the Dormant Commerce Clause itself. They were just internal to state law principles of construction, correct? That's correct. And as the complaint was pleaded, the complaint didn't depend for its claim about the reach of the dealer board statute being extraterritorial on an assertion that you could only get there by relying on the Dormant Commerce Clause. To the contrary, its reason for saying it applied extraterritorially was based on just a claim about state law's text, right? So if I'm understanding Your Honor's question correctly, I think that's right. And then in responding to the complaint, did you make an independent argument for not reaching extraterritorially that was just based on how best to read state law? So I think we did, Your Honor, and the cases that are sort of at the heart of this case, the County Motors and Fireside Nissan cases, are how we got there. We said these cases stand for the proposition that this is how you read Rhode Island's motor vehicle dealer law, which is that it doesn't extend to parties or conduct that occur outside the state. And in our view, that's exactly what the dealer board did. It agreed with us and held that the law didn't apply. So if I just play it out, if this stayed in state court, you hadn't removed, though you did remove. But if you hadn't removed and the appeal had gone to state court, presumably you would have made your argument to the state court that independent of this whole fight about the Dormant Commerce Clause, the best reading of state law is it doesn't apply extraterritorially. And that could have been resolved by the Rhode Island Supreme Court ultimately in your favor. The Dormant Commerce Clause would never arise in the case, right?  But you can see why there's a burpher and jurisdictional issue. Kicking myself for not thinking of it, Your Honor. Well, why did you remove? We thought because County Motors and Fireside Nissan were federal cases, we had a better chance of getting them applied correctly. Those were not removal cases. Those didn't start as state court actions. Fireside started as a 1983 action. Right, that's correct. And the County Motors case, the dealer board decided the issue and then they brought an independent complaint in federal court. When you removed, you removed on diversity grounds, correct? Correct. I'm just puzzled when you say you're kicking yourself for not thinking of it. That means you don't want to be in federal court. No, no, that's not it, Your Honor, at all. Because there's a way to get that to happen. Well, sure. But we actually think that this issue, and just to talk a little bit about the merits here, this is an issue that comes up a lot. And it comes up not just for Daimler, but for manufacturers of all kinds. And frankly, we're quite concerned about the position taken by RITC on sort of policy grounds and just practically how a decision applying a state dealer law structure territorially would impact Daimler's business and the business of manufacturers like that. Because, you know, in our view, this is a fundamentally different situation than, you know, the sort of economic impact type cases under the Commerce Clause that the Supreme Court was dealing with in the National Pork Producers case or this court was dealing with in IMS Health. This is, you know, a direct application of state law to conduct between, you know, non-state parties happening outside of the enacting jurisdiction. And how do we think about that language and that footnote in Pork Producers when it's true there's a transaction that's being regulated that involves a Massachusetts company and Daimler that's not a Massachusetts company, but it's involving Daimler's relationship to a Rhode Island dealer. So that Pork Producers sentence in that footnote about direct regulation of somebody not outside the jurisdiction is just ambiguous to me about whether it's saying meaning to cover a case like this or not meaning to cover a case like this. And Justice Gorsuch's discussion in that footnote of how this might be a case about horizontal federalism as opposed to the Commerce Clause, I'm not sure what to do about that either, Your Honor. But I think given that Ross, you know, the National Pork Producers case didn't overrule any of the past precedent, what I would do with that would be to point you to the case you mentioned when you were discussing this with my colleague, which is Edgar versus Might, which there is a connection to Illinois in the scenario we're talking about in that case, right? You have two out-of-state parties engaging in a transaction where they're essentially exchanging shares. The connection is that it's an Illinois corporation. There is a connection, you know, and that's the in-state harm that's attempting to be remedied in that case. But that didn't stop at least the plurality of the Supreme Court and potentially a majority, depending on how you read the footnote in National Pork Producers, for saying that that constituted direct regulation of a wholly out-of-state transaction. But the idea there would be both shareholders. Who would the transaction be between that Edgar is talking about? Yeah, so, well, I think necessarily, right, the concern in the Illinois statute is a buyout transaction, right? So you have an out-of-state party that doesn't own any shares yet and an out-of-state party that does and potentially many out-of-state parties that do. And the out-of-state party that's not a shareholder would then buy all of those shares. From another out-of-state. From another out-of-state party. Yeah, so that's to say both of those parties, although they're dealing with an Illinois corporation, neither of those parties has an Illinois tie. That's correct. So here, just by analogy, it's Daimler and the Massachusetts company. But Daimler is only being asked to act insofar as it has a tie to a Rhode Island dealer. So that seems different than Edgar, and I just don't know whether that's a difference that matters. Yeah, so I think, Your Honor, the way to describe what this situation would look like in the context of Edgar would be relying on that out-of-state party's ownership of a different Illinois company's shares, right? It's a different commercial relationship that you're then using on to tie them into the regulatory scheme in Illinois. I mean, it might be a little bit more clear to use the National Pork Producers case as an example. You know, the National Pork Producers case scenario that would apply in this situation would be, say, an Oregon pork producer that didn't sell into the California market in a way that violated the California statute, right? They're selling into the California market, but they're doing so in compliance. But they also raise pigs in a way that's inconsistent with California's regulations and sell them elsewhere, and claiming that their proximity to California is a sufficiently strong connection to find that they can be regulated, even though they are outside of the state. I think that raises really significant dormant commerce clause concerns. A final point, Your Honors, that I'll make. Let me ask a question. You removed under 1332 diversity. My question is, if you're aware, if there's an important federal interest, even though you remove it under 1331, would that still allow you to stay in the court? You know, it's very difficult to say without having briefed that issue, Your Honor. But I'm not dismissing out of hand the idea that there might be a sufficiently significant federal issue. I mean, certainly we take it as a sufficiently significant federal issue that we briefed this in the district court and we briefed it here sort of unconstitutional grounds. And I guess the issue here is nobody ever contested, you know, and the polling council said, yeah, we would agree there's an important federal interest. You know, nobody really raised that below or anywhere, but you're presuming there is. I think the party's conduct would suggest that, you know, we certainly... Well, you're discussing a federal question, but the question of whether there was a federal ingredient in the state law claim that inherently makes it a federal question, no one's ever talked about that question at all. No one ever saw the issue. Correct. But we'd be happy to talk about it. So the final point that I'll make in closing, Your Honors, is simply that, you know, the really significant policy issue here is not whether or not Rhode Island has sort of properly exercised its police powers to protect an in-state interest. And I think Dan was not challenging the idea that we have to comply with the dealer law when we do business in Rhode Island. We're not complaining that the cost of compliance that we're impacted with outside of Rhode Island is somehow too great. The issue here is really one of competing sovereignty between the two states. If you have bubbles of sovereignty that extend outside of the state's territorial borders, that creates really significant practical and constitutional problems, in our view, to the extent that you've reached the constitutional issue. So ultimately, I'd just say this is really a case about whether or not a law that's designed to regulate business relationships within a single state should be interpreted in a way that the regulation stays within the state's borders. And we think that both the Dealer Board and the District Court got that issue right and should be affirmed. If there are no further questions, thank you, Your Honors. Thank you, Counsel. At this time, Counsel for the Appellant can introduce himself back on the record. He has a two-minute rebuttal. Thank you. Ned Sackman for Rhode Island Truck Center. I wanted to touch on the point that this is a broader concern for Daimler, and this is going to cause, I think it was implied, trouble beyond just this case. This is a really narrow kind of conduct that we're seeking to remedy here. Daimler assigned us an AOR. Daimler granted us a dealership next to the border in a state that clearly had a statute that said relevant market area extends 20 miles without any limit on where the border is. The most this regulation is going to apply is to neighboring states in New England where they've put a dealer in a place where their relevant market area extends a little bit beyond the border. So this isn't a case where you're going to have regulations all over the country or unforeseen downstream effects. In addition, there was some talk of competing sovereignty. I just want to point out, DT&A could have complied with Massachusetts law and Rhode Island law in this case. There's no Massachusetts law that forbid it from sending notice to Rhode Island Truck Center before it put the new dealership in its AOR. It could have done that, and it didn't. With that, I'll just point the court to CTS Corp. I believe there was a comment about perhaps there's a footnote one of National Pork Producers Council is difficult to read. I'll suggest that the treatment of Edgar is going to be better understood if you look at IMS, which contrasts Edgar with CTS Corp. And CTS Corp., a similar anti-takeover statute was upheld in the Supreme Court shortly after Edgar. Can I just ask where you sit down? The Western Star claim, as you frame that, that's just a purely state law. There's no federal ingredient to that at all, correct? That claim relates... Your briefing makes an emphasis on that point, that that has nothing to do with anything other than just state law. That's right. I mean, it relates purely to the issue of whether they properly denied us that franchise. Okay, thanks.